IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RAYMOND M. MARKER, | ) | |
| | ) | |
| Petitioner, | ) | **MEMORANDUM OPINION,** |
| | ) | **ORDER AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | 1:08CV647 |
| | ) | 1:04CR10-1 |
| Respondent. | ) | |

Petitioner Raymond M. Marker, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (docket no. 83).[1] Petitioner was indicted on eleven counts of mail fraud in violation of 18 U.S.C. § 1341, two counts of wire fraud in violation of 18 U.S.C. § 1343, one count of securities fraud in violation of 15 U.S.C. § 77q(a) and 77x, and three counts of engaging in a monetary transaction, affecting interstate and foreign commerce, in criminally derived property over $10,000 in violation of 18 U.S.C. § 1957(a) and (b) (docket no. 9). He proceeded to trial, where he was convicted on all counts (docket no. 27). Petitioner was sentenced to 110-months imprisonment (docket no. 48). Petitioner appealed to the Fourth Circuit Court of Appeals, which affirmed his convictions, but remanded the case for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005) (docket nos. 60, 62). A resentencing was held and

---

[1] This and all further cites to the record are to the criminal case.

Petitioner was sentenced to 108-months imprisonment (docket no. 67). After a further unsuccessful appeal (docket nos 77, 78), Petitioner filed this current motion. Respondent has filed a response (docket no. 87), Petitioner has filed a reply (docket no. 89), and his motion is now before the court for a decision.[2]

DISCUSSION

Petitioner raises four possible claims for relief, all of which are related. Petitioner originally had counsel appointed by the court at his request (docket nos. 5, 6). Problems arose between Petitioner and his counsel which will be discussed in more detail later. After a lengthy pretrial process, Petitioner eventually proceeded to trial without counsel. He now claims (1) that the trial judge violated his right to counsel by forcing him to go to trial without counsel or standby counsel, (2) that his right to counsel was violated when the trial judge did not obtain a valid waiver of that right, (3) that the prosecutor abused the forfeiture process by using it to tie up Petitioner's assets to prevent him from hiring counsel while knowing that the assets were not subject to forfeiture, and (4) that the trial court left him unable to prepare a defense when it failed to properly order that he be given exculpatory personal documents and computer files.

---

[2] Petitioner has also filed a motion for expedited ruling and a certificate of appealability (docket no. 90). In it, he asks that the court not hold an evidentiary hearing on his motion, but go ahead and deny it as quickly as possible. He then wants a certificate of appealability so that he can proceed to the Fourth Circuit Court of Appeals as soon as he can. To the extent that Petitioner seeks an expedited ruling, his motion is now moot because a decision is being issued. To the extent that he seeks a certificate of appealability, no decision on that is proper until a final judgment has issued. He can seek a certificate at the appropriate time if he so wishes. His current motion will be denied.

Claim One

Petitioner's first claim for relief asserts that his right to counsel was violated because he was "forced to stand trial": (1) with no counsel or standby counsel, (2) while impaired by medication, (3) with no contact with any lawyer, (4) without knowledge of possible defenses, (5) without a law library, (6) without legal experience, (7) without a chance to prepare for trial, (8) without the ability to investigate his case, (9) without a chance to interview favorable witnesses, and (10) without standby counsel being offered. A similar claim was raised by Petitioner on appeal. There, appellate counsel argued in his brief that Petitioner's Sixth Amendment right to counsel was violated when he had to proceed without counsel or legal training and with only a short time to prepare for a complex case (docket no. 89 appx. A). This argument was rejected without discussion. *United States v. Marker*, 175 Fed. Appx. 590, 592 (4th Cir. 2006).

Petitioner is not allowed to relitigate claims in a section 2255 motion that he already pursued on direct appeal. *Boeckenhaupt v. United States*, 537 F.2d 1182 (4th Cir. 1976). Here, Petitioner's Sixth Amendment claim as argued on appeal encompassed most of his current arguments directly and others implicitly. In fact, except as to the allegations that Petitioner was impaired by medication and had no law library or access to witnesses, all of his current claims relate either to the fact that he did not have counsel or that he could not prepare because of time or legal ability. He cannot relitigate those claims now.

-3-

As to the additional allegations Petitioner raises, they have no effect. It is not clear that Petitioner can raise even these allegations, because they are merely an altered argument of the claim on appeal. In any event, they still fail. Petitioner claims that medication caused lethargy and mental confusion, but this is not borne out by the record in the case. During four pretrial conferences, Petitioner conversed and debated with the trial judge at length. At no time did he complain of such problems or, more importantly, exhibit such problems. He appeared at all times to be intelligent, lucid, and in charge of all of his faculties (docket nos. 24, 25, 56, 57). He cannot now simply make a bald allegation otherwise.

Petitioner's other allegations are likewise conclusory. He contends that he had no access to a law library or to favorable witnesses. Nevertheless, even now, although he obviously has current access to such a library, Petitioner does not explain one single defense he would have raised, one strategy he would have pursued, or name one witness he would have interviewed. Petitioner, as he has throughout his proceedings in this court, makes bold promises of action and stirring accusations, but he fails to back them up with anything specific.

The real problem for Petitioner is that, whatever difficulties he faced in proceeding to trial without counsel, he knew of them, but doggedly refused counsel anyway. He was not forced to go to trial without counsel in the conditions he describes. Instead, he willingly and knowingly chose to do so.

The trial judge initially denied Petitioner's motion to dismiss his appointed counsel (docket no. 25 at 23-24). He advised Petitioner to hire an attorney if he wished to have his appointed attorney released. Petitioner states then that he felt he could not hire an attorney because his funds had been seized by the government. He was aware he needed to make a motion to have his funds released and said that he intended to make such a motion (*id.* at 4, 21). The trial judge directed that any such motion from either Petitioner himself or his appointed attorney be accepted (*id.* at 22). Petitioner did not make the motion to have the funds released.

The trial judge eventually granted Petitioner's motion to have his appointed counsel removed at a hearing held on April 8, 2003, but only after Petitioner continued to insist that his appointed attorney be dropped from the case. The trial judge warned Petitioner of the dangers of proceeding *pro se*, and offered to appoint new counsel (docket no. 24 at 4, 20, 26-27). Petitioner would not agree to any appointed counsel unless he was allowed to interview the new attorney first. The trial judge would not grant that request (*id.* at 26-28). Petitioner was also advised at that time that he could hire counsel. He repeated that he could not do so because his assets had been seized by the government. Petitioner stated again that he would need to make a motion to have the assets released so that he could hire counsel (*id.* at 21-23). Petitioner knew at that time that he was incarcerated, that he could only make collect telephone calls, and that he had no law library (*id.* at 23.)

-5-

He was warned that he would be going to trial on June 14, 2004, and that he needed to be ready to defend the case with or without counsel on that date (*id.* at 29.)

At a later hearing on May 24, 2003, Petitioner complained again about his lack of access to records, lack of access to a telephone, computer or facsimile machine, lack of funds to hire an attorney, and inability to communicate with witnesses (docket no. 57 at 12, 18, 30). Still, he made no motion to obtain his records, no motion to release his funds so that he could hire counsel, and no motion to have new counsel appointed. The only motion that he made was to have his trial continued, which was denied (*id.* at 2, 18). Despite being well aware of pretrial motions he needed to make, Petitioner never made the motions, but instead proceeded to trial by himself. He put on no defense and was convicted.

As Respondent points out, Petitioner was given the option of continuing with the attorney he was appointed or of being appointed a different attorney. He was also well aware that he could have filed a motion to release his assets in an attempt to hire counsel. He chose none of these options even though he was also well aware of the difficulties he was having in preparing for trial. What Petitioner is essentially contending is that the trial judge should have either forced him to accept counsel under terms to which he clearly did not agree or should have appointed him counsel according to the terms he dictated, i.e., only after Petitioner had interviewed the potential appointee. A court cannot force a defendant to accept counsel who will act for him and a defendant has no constitutional right to standby counsel. *United*

*States v. Singleton*, 107 F.3d 1091, 1095, 1100 (4th Cir. 1997). There is also no law requiring a court to allow an indigent defendant to prescreen potential appointed counsel. Although a defendant is entitled to "counsel of choice," that term means only representation by a particular attorney of defendant's choosing, if he can afford to retain one, *United States v. Inman*, 483 F.2d 738, 739-40 (4th Cir. 1973), or proceeding pro se, *Faretta v. California*, 422 U.S. 806, 832-33 (1975). No matter how he attempts to construe it, Petitioner's entire first claim for relief is without merit.

Claim Two

Petitioner's second claim for relief alleges that the trial judge did not secure a valid waiver of Petitioner's right to counsel. He alleges that the trial judge failed to warn him of the "pitfalls" of self-representation such as those described in relation to his first claim for relief. He claims that his choice to represent himself was not made knowingly and intelligently "with [his] eyes wide open." (docket no. 89 at 5.)

Petitioner's claim is frivolous. Petitioner was clearly admonished by the trial judge that representing himself was likely a bad idea. The judge spoke to Petitioner at length on this point, twice calling it a "big mistake" and explaining the difficulties of proceeding at trial (docket no. 24 at 14, 20, 31-33). Both the judge and the Assistant United States Attorney prosecuting the case, compared the difficulty of representing oneself with performing one's own surgery (*id.* at 31, 33). Just after the trial judge made that comparison, Petitioner stated that he realized "it will be difficult. It will be next to impossible, especially incarcerated, and under the conditions under

which I will be working." (*Id.* at 33.) Still, he asked that his appointed attorney be relieved and stated that he would be making motions and efforts to be released on bond and to hire counsel (*id.* at 33-34). The record is clear that Petitioner was well warned, well aware of the task he faced and the conditions in which he would be working, and chose to have his attorney dismissed anyway. His second claim for relief should be denied.

### Claim Three

Petitioner's third claim for relief alleges that Respondent abused the forfeiture process by intentionally tying up his assets in order to prevent him from retaining his own attorney even though it knew that his assets were not forfeitable. He asserts that Respondent has admitted that there was no probable cause for demanding forfeiture because it "released its claim on the principle asset listed in the indictment after [Petitioner's] conviction." (docket no. 83 at 7.) He identifies that "principle asset" as being a single family residence located at 1930 Golden Gate Drive in Greensboro, North Carolina (docket no. 81 at 12).

Respondent does not deny that it sought to have Petitioner forfeit the house at 1930 Golden Gate Drive or that the house was seized. Further, as Petitioner correctly points out, a defendant who makes a motion to have a seized asset released to pay defense costs is entitled to a pretrial hearing on the matter. *United States v. Farmer*, 274 F.3d 800, 804-05 (4th Cir. 2001). The problem for Petitioner in the present case is that he never made a motion for such a hearing or to have the

house released. He never sought a probable cause determination. Petitioner stated that he wanted to put in such a motion (docket no. 25 at 4), that a motion needed to be filed (*id.* at 21), and that he would put in such a motion (docket no. 24 at 21, 22). He even appeared to state at one point that he had made such a motion (docket no. 57 at 17). To be sure, this was incorrect and the trial judge almost immediately stated that the only pending motion was one to continue the trial (*id.* at 18). Petitioner still did not make the motion to release his assets. Because Petitioner never filed a motion, he was never entitled to a hearing.

Respondent has also explained why it initially sought forfeiture of the house in this criminal case, restrained the property by recordation of a *lis pendens*, but then released the house after trial. It did so because it initially sought to have the house forfeited. Nevertheless, it then discovered that all of Petitioner's assets, including the house, were already a part of a receivership created on September 30, 2003, in a separate civil action brought by the Securities and Exchange Commission. *Securities and Exchange Commission v. Raymond Marker and United States Private Investment Fund*, 1:02CV1109 (M.D.N.C.). (PSR ¶¶ 36, 39, 82). Respondent then withdrew the *lis pendens* connected to the present case. More important, the fact that the house was part of the receivership in the civil case would have prevented Petitioner from using it to hire an attorney in this case no matter what Respondent did in the criminal action. It does not appear that Petitioner mounted any defense in the civil case. Default and default judgment (1:02CV1109 docket nos 30, 60, 61)

-9-

Case 1:04-cr-00010-NCT   Document 91   Filed 02/27/09   Page 9 of 12

were entered against him after he failed to file an answer or responsive pleading or to appear for hearings. Using his house or any other assets to hire an attorney was never a possibility in the criminal case.[3] His third claim for relief should be denied.

## Claim Four

Petitioner's fourth and final claim for relief is his allegation that Respondent withheld documentary evidence which was exculpatory and useful for impeaching the government's witnesses. He is referring to personal documents and computer records which were in the hands of the Receiver in the civil case. Those documents were turned over to the Receiver by his former attorney (docket no. 24 at 9).

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny, the failure by the prosecution to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Kyles v. Whitley*, 514 U.S. 419, 431 (1995). Evidence is "favorable" both when it would tend to exculpate the accused and when it can be used to impeach government witnesses. *United States v. Bagley*, 473 U.S. 667, 682 (1985). Where the prosecution fails to disclose evidence favorable to the accused, however, such evidence is material "only where

---

[3] Petitioner often made statements in various hearings indicating that he believed all or most of the United States Government was a monolithic entity and that different departments or agencies such as the United States Attorney's Office, the FBI and the SEC were conspiring against him. Therefore, he may see his criminal and civil matters to be one and the same, or at least believe that the United States Attorney in the criminal case and the SEC in the civil case were conspiring to tie up his assets and prevent him from hiring counsel. To the extent this is so, Petitioner has presented absolutely no evidence of such a conspiracy.

-10-

there exists a 'reasonable probability' that had the evidence been disclosed the result of the trial would have been different." *Kyles*, 514 U.S. at 434. A "reasonable probability" of a different result is shown when the government's failure to disclose evidence "undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434 (citing *Bagley*, 473 U.S. at 668).

Petitioner cannot meet the necessary standards to establish a Brady claim. As Respondent points out, Petitioner's allegations on this point are entirely conclusory. Despite the fact that the documents he claims were withheld were his own documents, he has not identified or described a single "favorable" document which he believes was in the hands of the Receiver. Also, Petitioner does not claim that Respondent relied on any of those documents at trial. It did turn over to Petitioner all of the documents in the United States Attorney's case file (docket no. 56 at 25). Petitioner's claim is entirely conclusory and should be denied as such. *Nickerson v. Lee*, 971 F.2d 1125 (4th Cir. 1992), *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999).

**IT IS THEREFORE ORDERED** that Petitioner's motion for an expedited ruling and certificate of appealability (docket no. 90) is denied for being moot as to the request for expedited ruling and denied without prejudice to it being renewed at the proper time as to the request for a certificate of appealability.

**IT IS RECOMMENDED** that Petitioner's motion to vacate, set aside, or correct sentence (docket no. 83) be **DENIED** and that Judgment be entered dismissing this action.

_____
WALLACE W. DIXON
United States Magistrate Judge

February 27, 2009